A89A2068. JACKSON v. THE STATE.

(388 SE2d 881)

SOGNIER, Judge.

David Lewis Jackson was convicted of trafficking in cocaine and he appeals.

1. Appellant contends the evidence was insufficient to support his conviction and therefore the trial court erred by denying his motions for a directed verdict of acquittal, for judgment notwithstanding the verdict, and for a new trial. Construed to support the verdict, the evidence adduced at trial showed that Hialeah, Florida police were contacted by a United Parcel Service (UPS) supervisor who told the Florida police a package containing suspected cocaine had been brought to the office. Detective Thomas Kellogg of the Hialeah Police Department testified he opened the package and found cold cream jars containing what later was determined to be 72.8 grams of powder and rock cocaine. The package was addressed to "John Jackson" at "39 Butler Street, Camilla, Georgia." Georgia police officials were contacted and Detective Kellogg brought the package to Georgia. The contents of the package, which had been examined and counted by Kellogg, were reexamined and recounted by Georgia police officials when Kellogg turned the package over to Investigator David Forrester of the Camilla Police Department. The package was rewrapped and then Steve Maddox, a UPS investigator who testified that he worked with Georgia authorities on the matter, on April 13, 1988 attempted to deliver the package at the address on the package. He stated that a woman answered the door and, in response to his statement that he had a package for "John Jackson," told him to deliver the package to The House of Music on Butler Street. Maddox obtained directions from the woman and, after consulting further with police authorities, took it as directed to The House of Music where the store clerk, Rosa Lyons, accepted it.

Glenda Marcus, appellant's sister, testified that on April 13, 1988 she lived at 39 Butler Street (which her testimony indicates is also known as 494 Butler Street Apartment 39) and that she was the person who instructed Maddox to take the package to The House of Music because appellant had told her to do so. She stated he explained to her that he was expecting to receive clothing from the UPS.

Lyons testified that on April 12, 1988 appellant asked her to accept a UPS package on his behalf because his sister was not at home. She stated appellant told her that the package would be in the name of John Jackson and its address would be "Butler Street, 39." Lyons wrote the address on a notepad and accepted money from appellant to cover charges on the package. When the package did not arrive, Lyons returned the money and the paper from the notepad with the address to appellant. On April 13, appellant returned to the store and asked her again to accept the package, telling her there would be no charges on the package. Shortly thereafter Michael Harris came into the store and repeated the message. Lyons stated she told Harris she had spoken with appellant and noted that if there was no charge on the package, the UPS would leave it on the porch at appellant's sister's residence. When Maddox arrived to deliver the package, Lyons stated that because she knew the package was coming she agreed to sign for it. The owner of The House of Music confirmed Lyons' account of the events and added that he heard appellant state that the package was coming out of Florida.

Harris testified that early on April 13 he met appellant and that appellant pointed out a black van and told Harris that the van belonged to Jeff Barker, a narcotics officer. Harris testified that appellant stated he did not want his sister (Marcus) to pick up the package of clothes and jewelry he was expecting.

Other evidence established that the paper, identified by Lyons as the piece of notepad paper on which she had written the address given her by appellant, was found in the trash at the home of Velma Scott, appellant's girl friend.

Appellant testified at trial that he was expecting to receive clothing from his brother who lived in Florida and denied knowing anything about the package in question or telling Lyons the address on the package.

OCGA § 16-13-31 (a) (1) provides that the offense of trafficking in cocaine is committed by "[a]ny person who knowingly sells, manufactures, delivers, or brings into this state or who is knowingly in possession of 28 grams or more of cocaine. . . ." The case law cited by appellant in which "actual" possession is required to establish the elements of trafficking in cocaine is not applicable to the April 1988 charged crime here since OCGA § 16-13-31 (a) was amended, effective March 28, 1988, by deleting the word "actual." Thus, the question is

whether there was evidence of possession of the contraband by appellant. "There is no requirement that the proof of . . . possession be by direct and not circumstantial evidence. It is the latter which authorized the [conviction] here. Secondly, to be convicted, [appellant did not have] to 'directly commit the crime.' OCGA § 16-2-20 (b) (1). [Appellant] is a party to the crime not only if he directly commits it but also if he '(3) Intentionally aids or abets in the commission of the crime; or (4) Intentionally advises, encourages, hires, counsels, or procures another to commit the crime.' [Cit.]" *Heath v. State*, 186 Ga. App. 655, 657 (368 SE2d 346) (1988). We find the circumstantial evidence was sufficient to sustain appellant's conviction. OCGA § 24-4-6. The Federal Constitutional standard in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), on which appellant relies, was also met.

2. Lyons testified that when appellant came into The House of Music on April 12 to ask her to accept a package for him, she told him she would have to get the approval of her employer, Faulk. She also testified that she talked with Faulk about the matter, told him what appellant had said, and that he gave her permission to accept appellant's package. Faulk later testified that appellant came to the store that day wanting to know if UPS had left a package for him. Because Lyons was not present, Faulk handled the matter, telling appellant no package had arrived. The prosecutor then asked Faulk if Lyons had talked to him about a package, to which Faulk responded, "[s]he had showed me some money that he [appellant] had left, along with a note, you know, with a name on it, and said if the package come—" Defense counsel interrupted with a hearsay objection, the overruling of which is enumerated as error.

We need not determine whether, as the State argues, Faulk's testimony constituted part of the res gestae, but see *Fuqua v. State*, 183 Ga. App. 414, 419 (359 SE2d 165) (1987), since, even assuming, arguendo, that Faulk's testimony was inadmissible hearsay, we find the admission of this testimony into evidence harmless because other admissible evidence presented at trial by Lyons established the same facts to which Faulk testified. " '(P)roof of the same facts by legally admissible evidence renders harmless the admission of inadmissible evidence. [Cit.]' [Cit.]" *Pittman v. State*, 183 Ga. App. 12, 15 (3) (357 SE2d 855) (1987). *Brown v. State*, 234 Ga. 632 (217 SE2d 150) (1975), questioned in *Painter v. State*, 237 Ga. 30 (226 SE2d 578) (1976), which appellant cites in support of his argument, is not applicable here in that the hearsay objection sustained therein was to a question which the defense asked a police officer regarding the actions of another witness, who was available at trial but who had not yet testified.

3. Appellant argues the trial court erred by denying his motion for mistrial based on two instances where evidence was admitted

which allegedly placed appellant's character into issue. As to the first matter, the record reveals and appellant in his brief acknowledges that defense counsel's timely objection prevented any such evidence being presented insofar as Investigator Barker's testimony is concerned. Where there is nothing in the record to support a contention of error, nothing is presented to this court for review. See *Shells v. State*, 168 Ga. App. 442 (309 SE2d 664) (1983). As to the other matter raised by appellant, on direct examination appellant testified that he had lived next door to Lyons for six years and that Lyons knew him either under his given name or as "Pop" Jackson, but not as "John Jackson." On cross-examination, the prosecutor challenged appellant's testimony that he had lived there for six years, asking "[t]here was a period of time, for a couple of years, that you weren't there, were you?" Appellant responded, "[t]hat's correct, when I got incarcerated."

"A defendant in a criminal case may testify in his own behalf. 'If a defendant testifies, he shall be sworn as any other witness and may be examined and cross-examined as any other witness, except that no evidence of general bad character or prior convictions shall be admissible unless and until the defendant shall have first put his character in issue.' OCGA § 24-9-20 (b). We agree with the State that the [prosecutor's] initial question to appellant constituted proper cross-examination of testimony appellant had given on direct about [the length of time he had lived next to Lyons.] ' "(I)t was appellant, on direct examination, who introduced the topic. He cannot now complain that the prosecutor followed up on cross-examination. (Cit.)" (Cits.)' [Cit.] . . . [I]t was appellant who introduced his character into evidence by discussing his criminal record in the response he chose to give to the prosecutor's proper cross-examination as to appellant's direct examination testimony. [Cit.]" *Mitchell v. State*, 193 Ga. App. 214 (387 SE2d 425) (1989). Therefore, we find no merit in appellant's enumeration of error.

*Judgment affirmed. Banke, P. J., and Pope, J., concur.*

DECIDED NOVEMBER 21, 1989.

*Michael L. Bankston*, for appellant.
*J. Brown Moseley, District Attorney, Robert G. Dunn, Ron S. Smith, Assistant District Attorneys*, for appellee.